Right. How much time would you like to reserve for rebuttal? Five minutes, please, Your Honor. All right. Go ahead, please. Good morning, Your Honors. I'm Houston Goddard. I'm here on behalf of Mr. Henrikson. Murder-for-hire's if-death-results element asks whether a death occurred, not how or why that death occurred. This is clear from the plain language of the element, which is phrased in the passive voice and contains no mens rea requirement. Without a mens rea requirement, this element does not require the intentional application of violent force and therefore cannot transform murder-for-hire into a crime of violence. The government takes a different view. The government asks this court to essentially rewrite the statute to include a mens rea requirement for the death-resulting element. But this is not what the statute says, and this is not how any other federal crime with a death-results variant works. The government argues that murder-for-hire is unique because it is the only federal crime with a death-resulting variant where the mens rea for the defendant's conduct is the intent to cause death. Do you agree that the murder-for-hire statute intends that a murder be committed, whereas all the felony murder statutes don't have murder as their base felony? Well, thank you, Your Honor. The distinction I was just going to – or the case – the statute I was just going to jump to is the federal carjacking statute, where the mens rea attached to the defendant's conduct is the the element's cause here. And the government's position as – the government's position with carjacking is that the mens rea stays with the defendant's conduct and does not carry forward to the death-resulting element. That was the position the government took before the Tenth Circuit in United States v. Lowell, and the Tenth Circuit agreed with the government. The logical consequence of the government's position there is that the same should hold true for murder-for-hire. And the government changes its position because it doesn't like consequence of that position, which is that murder-for-hire, with death resulting, would not be a crime of violence. But the government was right in Lowell. The Tenth Circuit was right in Lowell, and the government's wrong here. One of the government's arguments is, of course, that the death results is actually in different provisions, in different statutes, and it's not connected in the same way. What's your answer to that with respect to this statute? Well, different statutes are worded differently. The kidnapping statute has the exact same structure as the murder-for-hire statute. The death-results element is in the same place. So while it is true that there are certain statutes that are phrased certain ways, murder-for-hire is not unique in any way in where it places the death-results element. I'm looking at 1958, and it says, whoever causes another to travel in interstate commerce with the intent that a murder be committed, and then it has the variations, including of death results. Why can't I, or, it seems to me the natural reading of that is the death-results connects to the first part of the statute that says, with the intent that the murder be committed, not that some other death might have happened. Well, that is the, I understand the common sense appeal here, and I think the Fifth Circuit had a line. And it seems to me almost a common sense reading, not just common sense appeal. I mean, I have trouble reading it to cover, I'm on my way to murder somebody, and I get in a car accident and kill somebody, and therefore I'm covered under the statute. Sure. Well, I think here, I think the Fifth Circuit's recent opinion in Elkins is instructive, which was a stalking case resulting in death. And the government's argument there was exactly the same here, the same word, the mens rea for the stalking should carry forward to the resulting death. And the Fifth Circuit said there is common sense, there's a lot of common sense in the government's reading of the statute, but common sense is not the defining characteristic of the categorical approach. And I think what we have to do here, as Taylor instructs, is really just look to the elements. And the elements here is if death results in the passive voice, which Dean has told us suggests there is no mens rea, and this court agreed in McDuffie. The only thing the government has to prove here, and the only thing the government in this case did allege and prove, is that death resulted. There's no mens rea attached there, the government did not allege a mens rea, and the district court did not, the jury was not instructed it needed to find a mens rea. I want to ask you about the jury instruction, which is that the government is not required to prove that the defendant intended to cause the death of the victim. How does that play in to your argument? Because I don't think you didn't make a waiver argument on that, or foreclosure, but that was the instruction agreed to, right? Right, I think your honor is making the point here that the government, when it is seeking to convict someone, does not want to have the additional element that it has to prove. But now when it comes to the categorical approach, and the question is whether that element exists for the purpose of determining whether the crime is a crime of violence, the government says that that needs to be proven. I think the point here is that the mens, I'm just going to repeat myself, but the mens rea, there is no mens rea attached to the death results element. As your honor points out, that's the position the government took at the district court, and that's, that was the correct position. But doesn't it seem implausible that that congress would have intended, you know, the death penalty or mandatory life sentence in all of these accidental death hypos? Just seems implausible to me. Oh, I don't agree, your honor, I think what congress has done here is said there are certain crimes that are just inherently dangerous, quite bad crimes. If you set out to have to hire a hitman to have someone killed, and things fire out of control, or things go wrong, and the death results not exactly the way you had intended, congress has said you are on the hook for that death. And I think that makes eminent sense. Because this is a prototypical case of a crime of violence. Well, no, I wouldn't agree with that. You use the word dangerous, but I could have easily just put in violent. The government uses this term, a prototypical crime of violence, repeatedly in its briefing, and I think it's worth examining that. I think it's a bit of a circular argument. The government is saying, if the death results, if the statute is read the way the government would like it to be read, which is the only way to violate 1958 with death resulting, is to hire a hitman to kill someone, and the hitman then kills that person, then yes, that is premeditated first degree murder, and that is a prototypical crime of violence. But that assumes the government's reading of the statute. If the statute is read, as Mr. Henderson suggests, where death could be caused accidentally. But doesn't that conflict with the word results? It says death results from all of these other elements that come first, with the intent that a murder be committed, as consideration for receipt of an agreement to pay for that murder, if death results from that. It doesn't say if death results from a random car accident. Well, it says if death results from the defendant's conduct. So if the defendant hits- But what's the conduct? The conduct is defined earlier, right? Conduct is traveling interstate with the intent to commit murder. Exactly. Getting consideration for that intent and that travel to commit murder. Correct, Your Honor. So one of the hypotheticals Mr. Henderson has posed is that the defendant has been communicating with who he believes is a hitman, but it turns out it's actually an undercover cop, which is very common in these cases. The defendant travels across state line to meet with who he thinks is the hitman. As he's pulling into the hotel where they're going to meet, he realizes it's a cop. Pulls a U-turn, tries to speed away, ends up running over a pedestrian. All of the elements of 1958 have been hit, and a death resulted. This hits all of the elements in the statute, and as Taylor instructs, we look to the elements, and if they are all satisfied, that ends the inquiry. So the exception, I don't know if I want to call it an exception, but the unusual circumstance is that the death does not result related to the intended person, but it's an accidental or something else, right? Well, it could be the intended person or it could not. There are different hypotheticals. You would say if they set out murder for hire to murder Mr. Jones and then death results, then what? Because that was the intended person. If they set out to kill Mr. Jones and someone else dies? No, Mr. Jones dies. Mr. Jones dies. Well, sure. I mean, there could be examples where, you know, as I set out a couple in the briefing, Mr. Jones gets wind that someone's out to kill him. He thinks he sees the hitman approaching. It turns out it's just a random person, but he thinks it's the hitman. He panics. He runs in traffic and gets hit by a bus. He dies. Another example could be Mr. Jones learns that the, you know, a very dangerous cartel or crime family is out to get him and learns there's been a hit put out and knows that he is to escape that grisly fate. Mr. Jones has died. There has not been the intentional application of violent force against another. So those really are examples, whether it occurs to Mr. Jones or to a third party that upset the intended sequence in effect, right? Correct. And it's that little group of exceptions that, in your view, would take this out of the violent crime and would basically use the passive voice and say, we got to go with, is it Duffy or McDuffie? McDuffie. That's right. And I'm not sure I would just phrase them as exceptions. I mean, they are not the typical way one would expect. Right. This is not what we might imagine would be the scenario, but they are scenarios that could easily result. That's right. And Congress could have worded the statute differently if it wanted to cover just the victim as it did in stalking. It did not do that. It's an if death results element. Every other federal crime with the death results element courts have held that there is no mens rea attached and the same should hold true here. I would like to. You're saying if Congress knew that the victim committed suicide, they would still think that scenario would be covered by 1958. That just seems so implausible to me. The victim commits suicide. Right. This has happened. But then this. OK, go ahead. That's what happened in United States v. Houston, which is a drug case. The court said this was an unforeseen suicide, but it was a but for cause of the drug sale. And so I don't think that's anything that Congress may have had on its mind. But the language that Congress uses is what we are stuck with in the statute. And I would like to address the government's reliance on Runyon, which is, of course, the Fourth Circuit case. I see I'm over my time. If I'd like to reserve it, I would like to have three minutes and 40 seconds. Thank you. All right. Thank you. Good morning, Your Honors. May it please the court. Scott Meisler on behalf of the United States. Mr. Henriksen today is asking this court to diverge from sister circuits on two separate legal issues, all in service of a claim that cannot net him one less day served in custody. And we would ask the court to reject his arguments on either two grounds. The first one, which I'll mention just briefly, unless the court has questions, concerns the effect of Mr. Henriksen's unchallenged counts carrying life sentences. In this procedural posture, four of your sister circuits have affirmed without reaching the I understand Mr. Henriksen has not tried to distinguish those cases on their facts. Anyway, what he says is that this court has an embanked decision from 1984 called DeBrite that applies equally on direct appeal and collateral review and precludes courts from exercising discretion to follow that procedural path that your sister circuits have taken. We don't read DeBrite that way. We think the best way to read it, as the Supreme Court reminded us just a few weeks ago, is to keep in mind that statements and judicial opinions are addressed to the circumstances then before the court. DeBrite was about divergences and how this court handled the concurrent sentencing doctrine on direct appeal. Can I ask you, I am struggling with the precedents in this case. You have Linehan, you have McDuffie. And this looks like it's on all fours with McDuffie. You don't have a mens rea requirement in the text of the death results. It's in the passive voice. We don't need that mens rea to determine what's innocent or wrongful conduct. The preceding elements have a mens rea. I'm just not seeing how this can be distinguished from McDuffie. Right, so I think McDuffie and Dean, which it follows in the Supreme Court, are actually, I think, a pretty useful way to look at this case. I agree with you, Honor. Two of those factors in both McDuffie and Dean cut against our position, right? The ones you mentioned, that there's no mens rea next to the words death results in the statute, and that it's in the passive voice. But if you look at Dean in particular, the Supreme Court didn't just say- What about all four? The other elements already have a mens rea. We don't need a mens rea to decide what's innocent and wrongful conduct. So all four are present here. Well, I think some of those go to the consequences that your Honor was mentioning before about the way the statute is structured. But I think to me, the real key difference is intent to kill, intent to murder. None of those statutes have intent to murder provisions. And in particular, McDuffie is a general intent crime. Bank robbery, the Court emphasized, is a general intent crime. And so the murder liability there, this Court said, and cited multiple out-of-circuit opinions for that, is treated as felony murder. The general intent underlying bank robbery is what supplies the mens rea in the case. And then you look at the factors your Honor mentioned, right? That there was separate mens rea, intent to steal and purloin, and other provisions of McDuffie, of the bank robbery statute, between the provision criminalizing the actus reus and that enhanced statute way down below. One is in subsection A, one is in subsection E. Dean was similar, right? That you had this intent in the umbrella paragraph of a statute separated out by other forms of intent before you got to the aggravating sentencing factor. And the Supreme Court said it made no sense to carry that initial mens rea all the way through the statute. Now, Mr. Goddard has said in his reply brief, there's no support in the law for this issue about, or the argument we've made about the distance that mens rea has to travel. But I think Dean actually rebuts that. The Court was struggling with how you could apply a mens rea. That's all the way above that in umbrella paragraph and carried all the way down to a separate penalty provision. For the reasons some of your Honors were mentioning before, I don't think we have that at all in 1958. We know what the intent is, intent that a murder be committed. This Court in its pattern instructions and in Linehan says, that's actually a double-barreled intent. It's intent that a murder be committed, and it's intent that the murder be committed in exchange for something of pecuniary value. This is the classic- But then you went on in your instructions to approve the government is not required to prove that the defendant intended to cause the death of the victim. And I don't know, Judge McKeon, if you're referring to the proposed instructions or the ones that the Court actually gave. But I think you're right. This case was tried in 2015, 2016. There's been a lot of categorical approach, water under the bridge. I'm not sure it was on anyone's mind. And so I do think that if the Court adopts our construction of the statute in this case, going forward, juries will have to be instructed differently. I don't know what the Fourth Circuit District Courts have done since Runyon. What would the new jury instructions say? I think you would have to instruct them specific intent. I have to look back at this Court's pattern instructions to see what the Court, how the Court instructs in specific intent. But we're reading this as a specific intent provision as of the Fourth Circuit. The final jury instructions said, additionally, the government has alleged that but for the defendant's actions, Christopher Clark would not have died. Yes, I think those instructions would have been in line, right, with the causation principles that usually attach to death results provisions. It's at a minimum. Right, but causation is different than mens rea. And I don't... But for... It is. ...different than causation. I agree. And so this Court has... One thing I think also wasn't addressed in this case was whether a proximate cause requirement would have been required. In the Houston case... But let's not talk about causation. Where is the mens rea requirement in this final jury instruction? It was not there. There's no mens rea given. I think that issue is waived, forfeited, precluded many ways over, right? We're talking about collateral review here 10 years after. And it's not what Mr. Goddard has raised, right? It's he... Mr. Henriksen has raised a very different kind of claim here. And I think the Court is... Your Court is right. It wasn't given here and going forward have to be. I think from my reading of the Fourth Circuit's decision in Runyon, it was also not given in that case. But I haven't seen this issue come up. Thankfully, there aren't that many successful murder for hires that I'm aware of in this situation. But I think going forward there, the same would be true. District Court would have to instruct the jury on a mental state for... How does Runyon support you? Because they said the literal language doesn't include a mens rea requirement. I think they relied on the realistic probability test, which has now been overruled by Taylor. And they said it does apply to accidental deaths. So how does Runyon help you? I guess I don't... I read the decision, but mostly what Your Honor is saying, I agree. And I think we've acknowledged in our brief here, the Court twice referenced the realistic probability standard. So we don't say it wasn't present. But much like in this Court's decision in United States v. Eckford, it wasn't all the Court relied on. I think they were relying on some of the same basic principles of statutory construction when they were talking about... I think there's a line in the case that says something like the specific intent of the mens rea in the statute cannot be limited to their individual clauses. And by that, I think they read the statute as we do, as applying that intent listed in the body of the statute to the penalty provisions that follow it. So I think the Fourth Circuit had the chance to pull back from Runyon and overrule it in the Navarro case. And that was unpublished. But they said on plain error review, that it wasn't clear and obvious Runyon had been abrogated. And instead that they read the opinion as we do, as relying in part on the relationship between the mental state and the results that are required for it. I do want to respond to a couple of the points that Mr. Goddard had raised. And in particular, Judge Cody, your point about the penalty structure. I think that is a very important part of this exercise. The D.C. Circuit in the Smith case we've cited, and that Mr. Henriksen did not address in reply, pointed to that as important statutory context when considering a similar question. I actually don't think that that case helps you because I look at that statute and it says such killing results. So it has any person engaging in a working or in furtherance of a continuing criminal enterprise who intentionally kills or counsels commands, causes the intentional killing of an individual and such killing results. We don't have such killing result. We don't have if such death results. We just have if death results. So how does Smith help you? Because Congress knows when to say such and they didn't here. I agree with you. I think Smith is a much easier case for the government than this one is. But I think it rebuts the suggestion that Mr. Henriksen has made that there are no if results statutes, which are in the passive voice, that can be read to have a mens rea in them. That's an easier case because I think you could read the such as referring back to intentional killing. So our case is harder than that. I would grant the court that. But we're relying on it for those two propositions that the existence of it if results in the passive voice doesn't automatically remove you from the mens rea world. That's one. And the fact that the D.C. Circuit looks to the penalty structure of the provision, a statutory context. And here, I think, really, the one thing I want to emphasize that was not in our briefs is that 1958A, our statute here is connected to the neighboring statute, vicar murder, violent crimes and aid of racketeering. They share a definitional provision. They're connected in that way. And they feature similar penalty structures that if it's basically an inchoate, unsuccessful attempt at murder, you're punished by a term of years up to 10 years. If it actually hits murder, it's like mandatory life or death. I think Congress made these things in these penalty structures in parallel. And it makes sense to construe this statute is really focused on intentional murders. The penalty here is if death results.  The penalty is what? Mandatory life or death, which is the harsh. That's the way federal law treats first degree murder. 18 U.S.C. 111. I'm sorry, Your Honor. Yeah, let's say that we have a murder for hire. The person hired is directed to kill person A. He comes up to a group of people. Person A is there either because he doesn't identify the person properly or because he misses. He shoots and he kills person B. Is he liable under the statute? He is because that's that. I think that is an example of transferred intent upon which we agree, Mr. Hendrickson. It's not, of course. OK, that's step one of the question. And of course, killing person B is a crime of violence. I get that. But that means then that death results doesn't is not restricted to death of the intended victim resulting. So how do you get out from under the example of, well, he drives up to the spot. He realizes I got a problem. He turns around and kills a pedestrian. Death just resulted. And of course, it was not death of the intended victim. Why is that not covered by the statute? Or maybe it is, right? I don't I don't think that's covered by the statute. If you read us because we understand the statute to be focused on acts undertaken to realize the defendant's murderous intent. So I think under your hypothetical, you get transferred intent is covered when the defendant unleashes a hitman to kill person a hitman misses and kills B. Likewise, some of Mr. Hendrickson hypotheticals are about situations in which the OK. Let me give an intermediate example. He comes up to a crowd person. A, the intended victim there is there. He realizes he is in trouble. He gets in a firefight with the police and he kills person C. Right. Covered by the statute. I'm not sure that's covered by the statute. But here's here's why I don't know the courts to decide it. Because in that scenario, the the perpetrator has taken a substantial step toward the commission of an intentional murder. And under this court's decision in Linehan, that is an attempted use of force. So I think that's that to me is I'm not talking about attempt. I'm talking about is it is he guilty of the actual murder of the one that carries the life sentence or the death sentence? Right. I think to my mind, your honor, the the situations in which. The defendant is actually trying to realize or the perpetrator is trying to realize the defendant's murderous intent are probably covered by the statute. But the ones that. Occur early on these kind of negligent accidental things. I don't think you're covered by the statute. Some of that. Let's stop there.  Why not? I think some of those are screened out by causation principles. Right. Things that are the suicide example hypothetical, for example. Even under. So if it's a but for. It's not included. So if it's a but for it, I think you have to figure out what the language in Houston means about far removed and unforeseen consequences. I disagree with Mr. Goddard's reading of Houston. I think the court wasn't addressing itself to unforeseen suicides. It mentioned one time in the opinion that was the defendant's claim. The court didn't really engage with it. So just to be clear, when we get to the end of the statute, if you have a but for cause, then you say, well, now we have to split hairs even further, right? I think you have to apply principles of but for causation, right? I think Houston is the closest one that but for causation is not enough here. I understand, but I'm saying if the statute, regardless of the men's right issue, doesn't cover a scenario because of other principles, other jurisdictional principles, causation, then it shouldn't be part of this court's concern for the hypotheticals. And the other thing I want to mention is that we haven't really addressed ourselves to proximate cause this. We cited the Pineda Deval decision from this court, which adopts a presumption in favor of reading proximate cause into statutes. Houston announced an exception to that. And Pineda Deval acknowledged that exception for drug cases and cases that involve certain kinds of especially risky conduct. But I don't think Mr. Goddard is engaged with Pineda Deval and how that would apply here as well. I think certainly even in cases like felony murder, we don't have this intent to kill, this nexus between the acts and the result. Yeah, but the intent to kill covers only the intended victim. And you said this statute covers the person standing beside him. I think you just threw away the argument from intent to kill. He did not intend to kill that person. He intended to kill the intended victim who's not the right person. I want to be precise, Your Honor. I'm sorry if I mis-answered, if I gave you a confusing answer. What we think the statute covers is transferred intent situations because the law treats that the same way, right? It treats that as a product of the intent. And the death of the intended victim in an anticipated manner. That's some of the hypotheticals you were discussing, Mr. Goddard, about situations in which the defendant, I'm sorry, the target, the intended victim, that's the word the statute uses, runs out into traffic when he sees the hitman approaching. We've given examples in footnote eight and the surrounding text of our brief and treatises treat that as first degree intentional murder. You've killed the victim. You've realized your murderous intent, but it happened just in a manner that you were not expecting. There's a variation, and I apologize for the variations. Hitman is hired. He's supposed to kill person A. He comes up to person A and he misses. He intends to kill person A. He's aiming at person A, but he's got a bad aim. He kills person B. Guilty under the statute. I think that's covered by the statute. I think that's covered by transferred intent. But he had no intent whatsoever to kill person B. But that to me is, I think, the principle that both sides have agreed on in the briefing here that follows from the way Justice Thomas described transferred intent in his dissent in Boissin and in the way it's described in the Lefebvre treaties on criminal law. That's the easier one. I think the harder one, there's some harder ones that we've been discussing, but I think the easier one is hitman with bad aim. Yes, he didn't actually want to hit person C. He wanted to hit A, but the law deems the intentional, the intent transferred to the victim. I think Mr. Gunnar agrees with that. And what happens if he's aiming at person B and person C is not merely an incidental bystander, but it's the wife of the hitman. There's no intent whatsoever. He did not, he affirmatively did not want to kill his wife, but he did. I think it's the same result. I think it's the same result under the law. Well, what about number, if we now add spectator D into the constellation, sees the hitman, sees the gun, has a heart attack, covered or not? I think that depends on the causation answer, Your Honor. I think that depends on the causation answer, right? Because I don't think you have a problem with the intent there, because again, I think there the hitman has unleashed action to realize the defendant's murderous intent, but that's going to depend, I think, on principles of causation. I do want to, before you leave, ask you about Elkins, because I think Runyon, now you have this unpublished decision or memorandum disposition, and the Supreme Court was pretty clear in Runyon that they just went down the wrong path with this imagining no one would prosecute for that. But we have now the case out of the Fifth Circuit in Elkins. Why isn't that really persuasive for this case? I'm glad you asked that, Your Honor. I think two points are critical. The Fifth Circuit emphasized that that statute did not have an intent to kill. This is page 908 of the opinion in there. The court kind of block quoted the government's brief and faulted us for grouping some of the intents together, including intent to kill or harm, when all that the statute issued there, it required was an intent, I think, to intimidate or to harass. And so the court distinguished intent to kill scenarios. That's the first thing. And on the death results provision, I think that's actually a really good example of why some of the structural concerns I mentioned before make a difference. Elkins is a situation where the death results language in the stalking statute was in a totally different provision, 2261 versus 2261 A, and it was a provision that applied to multiple crimes. You don't have that here. This is a death resulting from a single use of interstate commerce facilities in the commission of murder for hire. It's very different structurally. Do you want to address Lowell? Yeah, Lowell, I think, is some of the same considerations, Your Honor. I think that is a statute in which the least culpable conduct is committed with an intent to harm and not an intent to kill. And it has some of the same structural differences from Dean, I mentioned before, an umbrella paragraph with the intent with separate penalty provisions kind of carved out in numbered sub paragraphs. That is admittedly one of the harder ones to distinguish here, but it is distinguishable on those grounds and especially, like I said, the structural ones and the absence of an intent to kill. Your penalty of structural one is whether the if death results is just within the same subsection or if it's in a separate subsection, that's your penalty structural argument. That's one part of it. And the second part of it is just the the bump you get, right, is whether the whether Congress is deeming this death resulting to be the kind of intentional murder that warrants mandatory life or death. That's not true of the carjacking statute where it goes from a max of 15 to a max of life, but it does not require mandatory life or death. So what if I were to read the statute more narrowly than you read it? That is to say, if I were to read the statute as covering death for hire only when death of the intended victim results, that's a narrow reading of the statute. Would you object to that reading of the statute? Is that foreclosed by other cases? I don't know that it's foreclosed by other cases, Your Honor. I think we would prefer to keep open the transferred intent principle because I think it is one that has been recognized in the federal cases and in the treatises and in Supreme Court precedent. So I think we want to keep that open. But if Your Honor saying that's the only way to read it, that's not reckless. I think the intentional reading is better than reading it to apply to accidental or reckless conduct. Could you address in Ross, the government said there wasn't a mens rea requirement, even though it is consistent with the structure of, what is that? 18, sorry. 1201.   No, they said 1201 has the same structure in terms of the if death results is in the same section as the base offense, right? But the government in that case said, you know, no mens rea requirement. So how would you square that with your structural argument? Right. I think that statute is a felony murder type statute, right? No intent to kill, no intent to murder required. It's kidnapping and any death results. We also pointed out in our brief that the kidnapping statute in particular has broad language if the death of any person results. So whereas you have in our statute two textual references to intended victim, you don't have that in kidnapping. It's death of any person results and no specific intent to murder or kill is required. It's felony murder. I have one other question. This goes to the penalty because we've been talking about you can get death or life imprisonment. That makes sense. And then it says, or shall we find not more than $250,000. So that seems to unsettle. That is a very odd provision, but there it is. So how do you square that with your argument? Well, we went murder, murder, death all the way down. That's funny, Your Honor. I think the Supreme Court has a footnote in the Burridge case cited in our brief. Addressing that is basically a Scribner's error. The or there is a strange kind of Scribner's error. I'm not sure why it was written that way, but it does seem to suggest that in lieu of these grievous penalties, the Supreme Court, I think, basically cited lower court cases treating it that way and didn't comment either way on that. But I think that's probably the way I read it as a Scribner's error. You think the first or in that last clause should be and, and then the second or, or because it's just or find or both. Yes, exactly. Exactly. But, but the earlier sections say shall be fined under this title or in prison for not more than 10 years or both. Let's look back at it, Your Honor. Second one, if personal injury results shall be fined under this title or in prison for not more than 20 years. So you're saying all three of them are Scribner's errors? Let's look back at this here. I mean, it uses that or three times, so. I have to look back at the cases, Your Honor. And like I said, I don't have them in front of me. I think the only spot I'm aware of the Supreme Court addressing this is under a different statute, 841 in the Burridge case. I'm happy to supply the court a letter. But my, my suspicion is that the lower court cases have treated this as you have to pick one of the incarcerated type penalties, life or death and or a fine. But you can't substitute a fine for those very, very high penalties. Yeah, even though that's exactly what those words say. I think that's what, that's the work of the Scribner's error doctrine. It has to do, Your Honor, is that it has to be a deviation from the plain language in situations where it produces an absurdity. But but again, I may be over my skis here because I don't have the case law in front of me at this moment. All right. My colleagues don't have any more questions. Well, thank you so much. You've gone way over your time. Go ahead, please. Well, again, Your Honor, I would like to address Mr. Misler's comments on proximate causes. I understand Mr. Misler to have just informed the court. The government's position is that 1958 requires proximate cause and conceded that if it does not require proximate cause and requires only but-for cause, the heart attack example posed by Your Honor would be fatal to the government's case. The government in Runyon conceded that but-for causation is a standard for 1958 with death resulting. The government says now that's relying on Pineda Duval. It cites that case once in a footnote on page 46. Pineda Duval came before Burridge, which said that but-for if death results means but-for causation. And this court in McDuffie following Burridge said the same. So I think it's quite clear that under 1958 with death resulting, we are operating in a world of but-for causation. And I understand the government's just conceded that's correct. Mr. Henderson prevails. I'd also like to discuss the penalty bump the government is discussing. Bank larceny of under $1,000 is a misdemeanor. Bank larceny of under $1,000 resulting in death is mandatory life for the death penalty. So Congress does have extreme jumps for, you know, for resulting deaths. And the one here is much less substantial than that. And the other point I'd like to make is, you know, the government attempts to distinguish Lowell by saying there there's only an intent to harm as opposed to an intent to cause death if you're looking at the least culpable behavior. But an intent to harm is sufficient to satisfy the force clause. So I don't think that's a, you know, it's a distinction without a difference in terms of the when we're operating in the world of the categorical approach. I don't think I have anything else to offer. I'd be happy to answer any questions the court might have. Do you have any questions? No, we don't. Thank you very much. Okay, thank you. Thank you to both counsels for the very helpful arguments. This case is submitted.
judges: McKEOWN, FLETCHER, KOH